**IN THE COURT OF COMMON PLEAS**
**HAMILTON COUNTY, OHIO**

| | | |
|---|---|---|
| ANNA WORSHAM | ) | CASE NO. |
| 10625 Stargate Ln. | ) | |
| Cincinnati, OH 45240 | ) | JUDGE: |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ANTHEM INSURANCE COMPANIES, INC. | ) | |
| d/b/a Anthem Blue Cross and Blue Shield | ) | |
| 4361 Irwin Simpson Rd. | ) | |
| Deerfield Township, OH 45040 | ) | **COMPLAINT FOR DAMAGES** |
| | ) | **AND INJUNCTIVE RELIEF** |
| **Serve Also:** | ) | |
| Anthem Insurance Companies, Inc. | ) | **JURY DEMAND ENDORSED** |
| d/b/a Anthem Blue Cross and Blue | ) | **HEREIN** |
| Shield | ) | |
| c/o CT Corporation (Stat. Agent) | ) | |
| James H. Tanks III | ) | |
| 4400 Easton Commons Way, #125 | ) | |
| Columbus, Ohio   43219 | ) | |
| | ) | |
| -and- | ) | |
| | ) | |
| Anthem Insurance Companies, Inc. | ) | |
| d/b/a Anthem Blue Cross and Blue | ) | |
| Shield | ) | |
| 3075 Vandercar Way | ) | |
| Cincinnati, OH 45209 | ) | |
| | ) | |
| -and- | ) | |
| | ) | |
| Anthem Insurance Companies, Inc. | ) | |
| d/b/a Anthem Blue Cross and Blue | ) | |
| Shield | ) | |
| 120 Monument Circle | ) | |
| Indianapolis, IN 46204 | ) | |
| | ) | |
| **-and-** | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

ANTHONY CHANEY              )
c/o Anthem Insurance Companies, Inc.  )
d/b/a Anthem Blue Cross and Blue Shield  )
4361 Irwin Simpson Rd.         )
Deerfield Township, OH 45040    )
                        )
                        )
           Defendants.    )
                        )

Plaintiff ANNA WORSHAM by and through undersigned counsel, as her Complaint against the Defendants, states and avers the following:

**PARTIES**

1. Plaintiff Anna Worsham ("Worsham" or "Plaintiff") is a resident of the city of Cincinnati, Hamilton County, state of Ohio.

2. Defendant ANTHEM INSURANCE COMPANIES, INC. d/b/a ANTHEM BLUE CROSS AND BLUE SHIELD ("Anthem") is a foreign-incorporated company that conducts business within the state of Ohio and others. The relevant location of the events and omissions of this Complaint took place was at Plaintiff's home address as she worked for Anthem from home.

3. Anthem is, and was at all times hereinafter mentioned, Worsham's employer within the meaning of, Family and Medical Leave Act ("FMLA") 29 U.S.C. § 2617 et seq., and R.C. § 4112.01(A)(2).

4. Upon information and belief, Defendant ANTHONY CHANEY is a resident of the state of Ohio.

5. Defendant Chaney is and/or was an employee of Anthem.

6. Defendant Chaney did, and at all times hereinafter mentioned, acted directly or indirectly in the interest of Anthem and/or within the scope of her employment at Anthem.

2

7. At all relevant times referenced herein, Defendant Chaney supervised and/or controlled Worsham's employment at Anthem.

8. At all times referenced herein, Defendant Chaney was Worsham's employer within the meaning of the FMLA and R.C. 4112.01(A)(2).

## JURISDICTION & VENUE

9. All of the material events alleged in this Complaint occurred in Hamilton County, Ohio.

10. Therefore, personal jurisdiction is proper over Defendant pursuant to Ohio Revised Code §2307.382(A)(1), (3) and/or (4).

11. Venue is proper pursuant to Civ. R. 3(B)(1), (2), (3), (5), and/or (6).

12. This Court is a court of general jurisdiction over the claims presented herein, including all subject matters of this Complaint.

## FACTS

13. Worsham is a former employee of Anthem.

14. At all times noted herein, Worsham was qualified for her position with Anthem.

15. At all times noted herein, Worsham could fully perform the essential functions of her job, with or without a reasonable accommodation.

16. Worsham is African-American, placing her in a protected class for her race.

17. Worsham is a female/woman, and thus is in a protected class for her sex/gender.

18. Worsham has Polymyositis, which negatively affects her everyday life activities, and thus is in a protected class for disability.

19. Worsham worked for Anthem, ending as a Medicare Field Specialist, from 2012 until Anthem terminated her employment on or about December 12, 2019.

3

20. Worsham initially came to Anthem as a temporary hire shortly after the Affordable Care Act ("ACA") was passed.

21. Shortly after her hire, Worsham gave notice of her disability to Anthem.

22. Worsham was promoted to field specialist role in or around 2015 after excellent early employment.

23. Worsham then began working under Defendant Chaney (field manager, Caucasian) and Laurabeth Hull (field director, Chaney's superior, Caucasian).

24. Going forward, Worsham consistently met all required sales and ACA Open Enrollment metrics.

25. Only in 2015 when Worsham first started the role did she stay under the metrics requirements for longer than a couple of months at a time.

26. Worsham, upon information and belief, was the only female/woman on her team, and Chaney often sent Caucasian, male/man employees to her on-site sales locations.

27. Chaney continued to send other field specialists to Worsham's on-site locations through the end of her employment, undercutting her ability to perform her essential job functions.

28. Disparately, Chaney did not send other employees to his Caucasian and male subordinates' on-site sales locations.

29. Worsham complained about this disparate treatment to Chaney in or around 2018 and multiple additional times through the end of her employment. These were protected complaints of discrimination.

30. Chaney cited production reason for his actions, even though Worsham had zero issues meeting her production goals.

31. Chaney's cited reason for this action was pretext.

4

32. Chaney actually took this action to undercut Worsham's performance.

33. Chaney also did not allow Worsham to go to others' sites for sales.

34. In or around November 2018, Worsham's disability flared and affected her autoimmune response.

35. Worsham then applied for FMLA leave with Anthem.

36. On or about November 26, 2018, Worsham began her FMLA leave of absence, which ended on or about March 1, 2019.

37. Worsham continued to keep Anthem updated on her situation while she was out on FMLA.

38. Prior to Worsham's return to work, she and HR had worked out which sales events she was to attend after her return.

39. On or about March 1, 2019 when Worsham returned to work, Chaney refused to place her at on-site sales events. This again directly undercut her ability to perform her essential job functions and went against what Worsham and HR had already planned.

40. Despite Chaney's undercutting of her job, Worsham continued to drum up sales of policies anyway.

41. Per Anthem employment policies, when employees do not meet their sales metrics for three straight months, they are placed on a Sales Improvement Plan ("SIP").

42. Anthem also places employees on SIPs when they do not have enough on-site sales events calendared during a month.

43. After Worsham returned from her medical leave, Chaney refused to send her to the on-site sales locations, which undercut her ability to make sales and to meet her on-site event metrics.

5

44. Chaney also refused to attend any sales events with Worsham, which is required per policy as she was on an SIP.

45. Chaney refused to replace Worsham at those sites until May 2019, multiple months after she had already returned from leave.

46. Chaney disparately did not prevent other Caucasian and male employees from performing on-site sales and attending on-site sales events.

47. Worsham continued to complain about these disparities to Anthem – these were additional protected complaints.

48. Further, Chaney intentionally stopped Worsham from showing to a planned event by telling her that the event had been canceled – this was the only reason she did not appear to the event.

49. After the canceled event, Chaney reported Worsham to the state. This resulted in a discipline against her licensure and was an adverse employment action and adverse action from Chaney against her.

50. Additionally, in or around Spring 2019, the federal government changed Medicare/Medicaid guidelines.

51. As a result of Chaney's undercutting and the change in government guidelines, Worsham lost substantial amounts of commissions and was disciplined.

52. Worsham reported this issue to Chaney, who did nothing.

53. Worsham then went to payroll/commissions (Travis (LNU), Caucasian) and asked how to improve.

54. Travis (LNU) told Worsham that Chaney had already spoken with him and denied he had prevented Worsham from attending on-site events.

6

55. Worsham told Travis (LNU) that this was not true as she would be disciplined for not having enough events on her calendar.

56. Travis (LNU) agreed that that was policy, and said he speak further with Chaney.

57. After, Chaney continued to deny his previous refusals to place Worsham at on-site events.

58. Chaney then blamed Worsham's medical leave and reasonable accommodations (of limiting on-site events to between 12-15 per month) as reason why she had had no events scheduled.

59. Worsham countered that zero events was fewer than twelve, and thus she should have been scheduled as all others in her role were.

60. Anthe also increased its required-sales metrics at this point.

61. Despite the higher requirements and Chaney's efforts to harm her ability to do her job, Worsham continued to meet her required goals, though at a lower level than she had while Worsham was not undercutting her work.

62. In or around November 2019, Chaney and Chauncy Billups (northern Ohio field manager, African American) called Worsham to discuss how to improve her sales further.

63. After the call, Chaney sent Worsham an email requiring her to meet even higher standard than her other, similarly-situated field specialists and required compliance by December 1, 2019. Billups was included in this thread.

64. Worsham asked if those goals only applied to her and noted she was selling better than two other Caucasian males on her team, but only she was being disciplined in this way. This was yet another protected complaint of discrimination and again included Billups.

7

65. Billups then asked Worsham what the underlying cause for her alleged lowered performance was, and she cited that it was due to Chaney's continued undercutting of her job duties.

66. Despite this, Chaney continued to refuse to place Worsham at on-site events, further undercutting her ability to do her job.

67. On or about December 12, 2019, Anthem terminated Worsham's employment citing "abuse of time."

68. This accusation was never thrown at Worsham at any point prior.

69. By the end of her employment, Worsham was the only female/woman on her team. After her termination, there were no women on the team, upon information and belief.

70. Defendant's purported reason(s) for Worsham's termination was pretextual.

71. Defendant's termination of Worsham was an adverse employment action against her.

72. Defendant actually terminated Worsham's employment discriminatorily against her race, disabilities, and/or in retaliation against her protected complaints, and/or in a retaliatory effort against her FMLA.

73. As a result of the above, Worsham has suffered damages, including economic damages, as well as severe emotional distress, anxiety, and depression.

## COUNT I: RACIAL DISCRIMINATION IN VIOLATION OF R.C. §4112, *et seq.*

74. Worsham restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

75. Worsham is African-American, and thus is in a protected class for her race.

76. R.C. § 4112 *et seq.* provides that it is an unlawful discriminatory practice for an employer to discriminate against an employee on the basis of the employee's race.

8

77. Defendant treated Worsham differently than other similarly situated employees based upon her race.

78. Defendant's termination of Worsham was an adverse employment action against her.

79. Defendant's purported reason(s) for Worsham's termination was pretextual.

80. Defendant actually terminated Worsham's employment due to her race.

81. Defendant violated R.C. § 4112 *et seq.* by terminating Worsham because of her race.

82. Defendant violated R.C. § 4112.02 and R.C. § 4112.99 by treating Worsham differently from other similarly situated employees outside her protected class.

83. Defendant violated R.C. § 4112.02 and R.C. § 4112.99 by applying their employment policies in a disparate manner based on Worsham's race.

84. Defendant violated R.C. § 4112.02 and R.C. § 4112.99 by applying their disciplinary policies in a disparate manner based on Worsham's race.

85. Worsham incurred emotional distress damages as a result of Defendant's conduct described herein.

86. As a direct and proximate result of Defendant's acts and omissions, Worsham has suffered and will continue to suffer damages.

## COUNT II: DISABILITY DISCRIMINATION IN VIOLATION OF R.C. § 4112, *et seq.*

87. Worsham restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

88. Worsham is in a protected class for her disabilities (described *supra*).

89. R.C. § 4112 *et seq.* provides that it is an unlawful discriminatory practice for an employer to discriminate against an employee on the basis of the employee's disabilities.

9

90. Defendant treated Worsham differently than other similarly situated employees based upon her disability.

91. Defendant violated R.C. § 4112.02 and R.C. § 4112.99 by treating Worsham differently from other similarly situated employees outside her protected class.

92. Defendant violated R.C. § 4112.02 and R.C. § 4112.99 by applying their employment policies in a disparate manner based on Worsham' disability.

93. Defendant violated R.C. § 4112.02 and R.C. § 4112.99 by applying their disciplinary policies in a disparate manner based on Worsham' disability.

94. Worsham incurred emotional distress damages as a result of Defendant's conduct described herein.

95. As a direct and proximate result of Defendant's acts and omissions, Worsham has suffered and will continue to suffer damages.

## COUNT III: SEX/GENDER DISCRIMINATION IN VIOLATION OF R.C. 4112 et seq.

96. Worsham restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

97. Worsham is a member of a statutorily protected class based on her sex/gender under R.C. § 4112 et seq.

98. During her employment with Anthem, Worsham was subjected to offensive and harassing conduct by Defendant Blomfield based on her sex/gender.

99. Defendant treated Worsham differently than other similarly situated employees based on her sex/gender.

100.     Defendant discriminated against Worsham on the basis of her sex/gender throughout the end of her employment with the company.

10

101.    Defendant terminated Worsham's employment.

102.    Defendant's termination of Worsham was an adverse employment action against her.

103.    Defendant's cited reason(s) for Worsham's termination are pretextual.

104.    Defendant actually terminated Worsham because of her sex/gender.

105.    Defendant violated R.C. § 4112 et seq. when they terminated Worsham's employment based on her sex/gender.

106.    Defendant's discrimination against Worsham based on her sex/gender violates R.C. § 4112 et seq.

107.    As a direct and proximate result of Defendant's conduct, Worsham suffered and will continue to suffer damages.

## COUNT IV: RETALIATION

108.    Worsham restates each and every prior paragraph of this complaint, as if it were fully restated herein.

109.    As a result of the Defendant's discriminatory conduct described above, Worsham complained of the discrimination, harassment, and disparate treatment she was experiencing.

110.    Subsequent to Worsham's complaints to management about harassment, bullying, and disparate treatment toward her, Defendant took adverse employment actions against Worsham, including terminating her employment.

111.    Defendant's actions were retaliatory in nature based on Worsham's opposition to the unlawful discriminatory conduct.

11

112.     Pursuant to R.C. § 4112 *et seq.*, the ADA, and Title VII, it is an unlawful discriminatory practice to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice.

113.     As a direct and proximate result of Defendant's retaliatory discrimination against and discharge of Worsham, she has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT V: RETALIATION IN VIOLATION OF THE FMLA

114.     Worsham restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

115.     During her employment, Worsham qualified for and attempted to take intermittent FMLA leave.

116.     Defendant knew Worsham took FMLA leave.

117.     After Worsham utilized her qualified FMLA leave, Defendant retaliated against her.

118.     Defendant terminated Worsham's employment.

119.     Worsham's termination was an adverse employment action against her.

120.     Defendant's proffered reason for Worsham's termination was pretextual.

121.     There was a causal link between Worsham's medical leave under the FMLA and Defendant's termination of Worsham's employment.

122.     Defendant actually terminated Worsham for her FMLA use.

123.     Defendant retaliated against Worsham by terminating her employment.

124.     Defendant's actions show that it willfully retaliated against Worsham in violation of U.S.C. § 2615(a).

E-FILED 04/08/2021 03:14 PM  /  CONFIRMATION 1054042  /  A 2101222  /  COMMON PLEAS DIVISION  /  IFIJ

125.     As a direct and proximate result of Defendant's wrongful conduct, Worsham is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs, and reasonable attorney's fees.

## DEMAND FOR RELIEF

WHEREFORE, Worsham demands from Defendant the following:

a) Issue a permanent injunction:

    i.    Requiring Defendant to abolish discrimination, harassment, and retaliation;

    ii.    Requiring allocation of significant funding and trained staff to implement all changes within two years;

    iii.    Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal responsibility to promptly investigate complaints and/or take effective action to stop and deter prohibited personnel practices against employees;

    iv.    Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and

    v.    Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

b) Issue an order requiring Defendant to expunge her personnel file of all negative documentation;

c) An award against each Defendant for compensatory and monetary damages to compensate Worsham for physical injury, physical sickness, lost wages, emotional

E-FILED 04/08/2021 03:14 PM / CONFIRMATION 1054042 / A 2101222 / COMMON PLEAS DIVISION / IFIJ

distress, and other consequential damages, in an amount in excess of $25,000 per claim

to be proven at trial;

d) An award of punitive damages against each Defendant in an amount in excess of

$25,000;

e) An award of reasonable attorneys' fees and non-taxable costs for Worsham's claims as

allowable under law;

f) An award of the taxable costs of this action; and

g) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

   /s/ Matthew Bruce
Matthew G. Bruce (0083769)
     Trial Attorney
Evan R. McFarland (0096953)
**THE SPITZ LAW FIRM, LLC**
11260 Chester Rd, Suite 825
Cincinnati, OH 45246
Phone: (216) 291-4744 x173
Fax:   (216) 291-5744
Email: Matthew.Bruce@SpitzLawFirm.com
Email: Evan.McFarland@SpitzLawFirm.com

*Attorneys for Plaintiff Anna Worsham*

14

15

## **JURY DEMAND**

Plaintiff Anna Worsham demands a trial by jury by the maximum number of jurors permitted.


                                           /s/ Matthew Bruce
                                     Matthew G. Bruce (0083769)